UNITED STATES

v.

Jason R. GATLIN, Engineman Third
Class (E–4), U.S. Navy.

NMCCA 200300551.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 17 June 1997.

Decided 29 Dec. 2004.

LCDR Eric McDonald, JAGC, USN, Appellate Defense Counsel.

Capt Glen Hines, USMC, Appellate Government Counsel.

Before DORMAN, Chief Judge, SUSZAN, and HARRIS, Appellate Military Judges.

DORMAN, Chief Judge:

The appellant was tried by special court-martial composed of a military judge, sitting alone. Pursuant to his pleas, the appellant was convicted of conspiracy to possess lysergic acid diethylamide (LSD) with the intent to distribute it; single specifications of the use, possession, distribution, and introduction of LSD; and single specifications of the use and possession of marijuana. The appellant's offenses violate Articles 81 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 912a. The adjudged and approved sentence includes confinement for 100

days, forfeiture of $600.00 pay per month for 6 months, reduction to pay grade E–1, and a bad-conduct discharge.

The appellant has raised five assignments of error. He first argues that his use and possession of marijuana, as well as his possession, distribution, and introduction of LSD should be considered an unreasonable multiplication of charges. He next argues that he has been denied a speedy review of his court-martial. The appellant's third and fourth assignments of error focus on post-trial processing errors involving the convening authority's (CA) action and the staff judge advocate's recommendation (SJAR). Lastly, the appellant notes that the record of trial does not contain page 2 of the charge sheet— the page bearing the signature of the CA referring the case to trial.

Additionally, on 21 May 2004, this court specified the issue of whether the post-trial recommendation, prepared by someone who was neither the staff judge advocate nor the legal officer for the CA, complied with the requirements of RULE FOR COURTS-MARTIAL 1106, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). Both the appellant and the Government have responded with written pleadings to that specified issue.

We have carefully considered the record of trial, the appellant's five assignments of error, the appellant's brief on the specified issue, the Government's responses, and the appellant's reply brief. We conclude that while it is appropriate to presume regularity in the post-trial preparation of an R.C.M. 1106 recommendation, the appellant is entitled to relief because he has been denied a speedy review and because he has been convicted of charges that are either multiplicious or represent an unreasonable multiplication of charges. We will take corrective action in our decretal paragraph. In light or our corrective action, we conclude that the remaining findings and reassessed sentence are correct in law and fact, and that no error remains that is materially prejudicial to the substantial rights of the appellant. Art. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Facts

The providence inquiry revealed that on 28 March 1997 the appellant purchased 10 hits of LSD for $50.00. He then brought these 10 hits on board Naval Station San Diego and gave them to another Sailor. The appellant did not consume any of the LSD he purchased that day. Based upon this information the appellant was convicted of separate specifications of the possession, distribution and introduction of LSD.

The providence inquiry also revealed that the appellant purchased a $10.00 bag of marijuana on 7 March 1997. He brought the marijuana back to his apartment, where he smoked it that evening. Based upon this information, he was convicted of separate specifications of the use and possession of marijuana.

Although the military judge asked counsel whether the LSD offenses were multiplicious, and whether the marijuana offenses were multiplicious, the trial counsel argued that they were not, and the defense counsel concurred. With respect to each set of specifications, the trial counsel suggested that the military judge could consider these offenses multiplicious for sentencing. The military judge, however, never stated that he considered the offenses multiplicious for either findings or sentencing.

Following announcement of the sentence on 17 June 1997, the military judge reviewed the sentencing provisions of the pretrial agreement with the appellant. The military judge then examined Appellate Exhibit III, the appellant's acknowledgement of his appellate and post-trial rights. This is normally a two-page document. Only one page is contained in the record of trial and that page does not contain the appellant's signature. On the record, however, the appellant informed the military judge that he wanted his copy of the record of trial delivered to the trial defense counsel. The appellant's record of trial was authenticated on 5 September 1997 and, as requested, a copy of the record of trial was provided to the trial defense counsel three days later.

The next dated document attached to the record of trial is what purports to be the

R.C.M. 1106 recommendation.[1] It is dated 22 January 1998. It is from the "Command Services Officer, Trial Service Office West, San Diego, California," and is addressed to the "Commanding Officer, USS ELLIOT (DD–967)," the convening authority (CA). This SJAR is signed by K.D. Stampher, LT, USN. The record does not contain a receipt for the SJAR, or a waiver of the appellant's right to submit clemency matters or a response to the SJAR. The next dated document is also dated 22 January 1998; it is the CA's action. The action states that a copy of the "Legal Officer's recommendation was submitted to the accused's defense counsel on 22 January 1998 . . . ." CA's Action of 22 Jan 1998. Also attached to the record is an undated copy of the Special Court–Martial Order that pertains to this case. That document bears the signature of both the CA and the Legal Officer for the USS ELLIOT.

The next date gleaned from the record is contained on the cover of the appellant's court-martial. Appearing on the cover page is a stamp reading, "Certified to be a True Copy." The trial counsel signed this certification on 19 January 2001. Then on 18 March 2003, the Administrative Support Division of the Navy–Marine Corps Appellate Review Activity entered the case into its database, indicating that the record had been received by the Office of the Judge Advocate General of the Navy.[2] The case was docketed with this court on 3 April 2003.

On 18 June 2003, this court granted a Motion to Compel Production of the second page of the charge sheet, a receipt for the SJAR or legal officer's recommendation, and a dated copy of the court-martial order. On 9 July 2003, the Government informed the court that it could not locate the documents and thus was unable to comply with the court order to produce them.

### The SJAR

■ In response to our specified issue, the appellant argues that, since the SJAR was not prepared by a person qualified to act as the staff judge advocate, the CA's action should be set aside. Appellant's Response to Court Order of 20 May 2004. In his argument, the appellant relies upon *United States v. Finster*, 51 M.J. 185 (C.A.A.F.1999) and *United States v. Cunningham*, 44 M.J. 758 (N.M.Ct.Crim.App.1996). Both of these cases, however, involved R.C.M. 1106 recommendations that were prepared by enlisted personnel. In response, the Government relies on *United States v. Wilson*, 54 M.J. 57 (C.A.A.F.2000) and *United States v. Hensley*, 52 M.J. 391 (C.A.A.F.2000). In both of those cases, officers qualified to prepare R.C.M. 1106 recommendations actually prepared them. Those officers, however, were not the individuals who should have prepared the recommendation in those particular cases. In *Wilson*, the recommendation was prepared by a judge advocate who signed the recommendation as the acting staff judge advocate. In *Hensley*, "a qualified legal officer" signed the recommendation. *Hensley*, 52 M.J. at 392. That legal officer was LT Stampher, known to this court to be the same officer who signed the recommendation in the case before us.

The Government argues that we should invoke a presumption of regularity and find no error. Government's Answer to Appellant's Response to Court's Specified Issue of 13 Aug 2004 at 2. In *Hensley*, however, under almost identical facts, the Government conceded before our superior court that it was error for LT Stampher to have prepared the SJAR in that case. *Id.* at 392. Under the facts of the case before us, we once again find error because there is absolutely no explanation in the record as to why LT Stampher prepared the SJAR. The appellant, however, has the burden of demonstrating that the error was plain. To do so:

He must show that (1) there was an error; (2) that it was plain or obvious; and (3) that the error materially prejudiced a sub-

---

1. This document is not an SJAR, because it was not prepared by a staff judge advocate. We will refer to it, however, as the SJAR throughout the remainder of this opinion.

2. Exactly when the record was received is not clear. Attached to the record is an e-mail dated 5 March 2003, indicating that the Administrative Support Division of the Navy–Marine Corps Appellate Review Activity had already been in contact with the USS ELLIOT attempting to locate missing pages from the appellant's appellate rights statement. Those pages are still missing.

stantial right. *United States v. Finster*, 51 M.J. 185, 187 (1999), citing *United States v. Powell*, 49 M.J. 460, 463, 465 (1998). Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents "some colorable showing of possible prejudice." *United States v. Wheelus*, 49 M.J. 283, 289 (1998). *Wilson*, 54 M.J. at 59. In the case before us, the appellant has not made a colorable showing of possible prejudice. In fact, he has not made a showing of any prejudice resulting from LT Stampher's preparation of the SJAR. Accordingly, we will not return this overly stale case for a new SJAR and CA's action.

## Multiplicity/Unreasonable Multiplication of Charges

In his first assignment of error, the appellant asserts that he was subjected to an unreasonable multiplication of charges with respect to both the LSD and the marijuana offenses. He argues that:

SPECIFICATIONS 3 AND 6 OF CHARGE II AND 5, 7 AND 8 OF CHARGE II ARE, RESPECTIVELY, NOT AIMED AT DISTINCTLY SEPARATE CRIMINAL ACTS, AND CONSTITUTE UNREASONABLE MULTIPLICATION OF CHARGES.

Appellant's Brief of 25 Jul 2003 at 3.

Specifications 3 and 6 of Charge II both concern the small quantity of marijuana the appellant purchased at Ocean Beach, California, on 7 March 1997. After the purchase the appellant took the marijuana back to his apartment. Later that day, the appellant smoked this same marijuana in a pipe that belonged to his girlfriend. The appellant told the military judge that his girlfriend did not use any of the marijuana. Specifications 5, 7 and 8, all refer to the 10 hits of LSD the appellant purchased in downtown San Diego. After he purchased the LSD he brought it on board Naval Station San Diego, and gave the entire amount of LSD to another Sailor, who apparently then brought the LSD on board the appellant's ship. Based upon his argument that these offenses are an unreasonable multiplication of charges, the appellant's

prayer for relief is that we dismiss Specifications 6, 7 and 8 of Charge II. We agree that the appellant is entitled to relief, and will grant a portion of the relief he requests. We do so because based upon our conclusion that some of the specifications not only represent an unreasonable multiplication of charges, but also are multiplicious for findings.

The appellant has not challenged the specifications as being multiplicious, perhaps because, when asked his position at trial, the trial defense counsel concurred with the trial counsel that the specifications were not multiplicious. In response to the appellant's assignment of error, the Government notes the failure of the appellant to raise this issue at trial. Additionally, the Government asserts, as it did at trial, that the specifications are "aimed at separate and distinct conduct." Government Brief of 14 Jan 2004 at 3.

We, however, conclude that under the facts of this case the specifications alleging the use and possession of marijuana are multiplicious. Additionally, we conclude that the possession and introduction of LSD, as well as the possession and distribution of LSD are multiplicious. In *United States v. Bullington*, 18 M.J. 164 (C.M.A.1984) our superior court held that specifications alleging the use and possession of the same amount of a controlled substance are multiplicious. Similarly, in *United States v. Hendrickson*, 16 M.J. 62 (C.M.A.1983) our superior court held that specifications alleging the possession and introduction of the same quantity of a controlled substance are multiplicious for findings. The same reasoning would apply to possession and distribution of the same quantity of a controlled substance. *See United States v. Savage*, 50 M.J. 244, 245 (C.A.A.F.1999). Since we conclude that the challenged specifications are "facially duplicative" we will dismiss the specification alleging possession of marijuana and the specification alleging possession of LSD. *See United States v. Lloyd*, 46 M.J. 19, 24 (C.A.A.F. 1997). Furthermore, even if we did not hold the possession specifications to be multiplicious in this case, we would hold that they represent an unreasonable multiplication of charges. *See United States v. Quiroz*, 57 M.J. 583, 585–86 (N.M.Ct.Crim.App.2002)(en

banc), *aff'd,* 58 M.J. 183 (C.A.A.F.2003)(summary disposition).

## Post–Trial Processing

In his second, third, and fourth assignments of error, the appellant raises legitimate concerns about the post-trial processing of his case. In the second assignment of error he asserts that he has been denied a speedy review. In his third assignment of error he questions the date of the CA's action, noting that the record contains two different documents purporting to be the action—one is dated, the other is not. The one that is dated bears the same date as the SJAR, and there is no indication the appellant either submitted matters or waived his right to submit matters in response to the SJAR under R.C.M. 1106(f)(4)–(6). In his fourth assignment of error the appellant asserts prejudicial error, claiming that the trial defense counsel was not served with the SJAR. That assertion is, however, rebutted by the content of the CA's action, wherein it states that the SJAR was served upon the trial defense counsel on 22 January 1998.

■ A military appellant has a right to speedy review of the findings and sentence. *United States v. Williams,* 55 M.J. 302, 305 (C.A.A.F.2001); *United States v. Tucker,* 26 C.M.R. 367, 369, 1958 WL 3382 (C.M.A.1958); *United States v. Khamsouk,* 58 M.J. 560, 561 (N.M.Ct.Crim.App.2003). In order to obtain relief for legal error under Article 59(a), UCMJ, however, the appellant must show actual prejudice in addition to unreasonable and unexplained delay. *United States v. Jenkins,* 38 M.J. 287, 288 (C.M.A.1993).

In addition to this unreasonable and unexplained delay, the Government is unable to provide to this court a record of trial that contains all the documents normally attached to a record. *See* R.C.M. 1103(b)(2) and (C)(1). Notably, the record is missing the page 2 of the Charge Sheet, a receipt from the appellant or his counsel for service of the SJAR, the appellant's waiver of his right to submit matters under R.C.M. 1106, a signed and dated copy of the court-martial order, and the signature page of the appellate rights statement. The unexplained delay of

almost 6 years between the date of trial and the date the case was docketed with this court only served to exacerbate the problem of being able to locate those documents. The appellant has failed to show, however, how he was prejudiced by the absence of these documents.

■ Our superior court recently concluded that this court may grant sentence relief for unreasonable and unexplained delay under Article 66(c), UCMJ, even in the absence of actual prejudice. This court is required to determine what findings and sentence "should be approved," based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay. *United States v. Tardif,* 57 M.J. 219, 224 (C.A.A.F.2002). In this case we have unreasonable post-trial delay, an SJAR that was improperly prepared, the inability of the Government to provide a record of trial of the quality envisioned by R.C.M. 1103(b)(2) and (c)(1), and an appellant who has served his entire sentence to confinement. We conclude, therefore, that upon reassessment of the sentence, it is appropriate for us to consider all of these factors in determining the sentence that "should" be approved in this case.

## Conclusion

In light of our resolution of the appellant's first assignment of error, the findings of guilty to Specifications 5 and 6 of Charge II are set aside. Those specifications are dismissed. The remaining findings are affirmed.

As a result of our action on the findings we have reassessed the sentence in accordance with the principles of *United States v. Cook,* 48 M.J. 434 (C.A.A.F.1998), *United States v. Peoples,* 29 M.J. 426, 428 (C.M.A.1990), and *United States v. Sales,* 22 M.J. 305, 307–08 (C.M.A.1986). In arriving at the sentence that should be approved in this case, we have also considered the unexplained and unreasonable post-trial delay, and its attendant consequences, as outlined in the factors addressed above. Accordingly, upon reassess-

ment of the sentence, only so much of the sentence as extends to confinement for 100 days, forfeiture of $600.00 pay per month for 6 months, and a reduction to pay grade E–1 is affirmed.[3] The supplemental court-martial order shall reflect the findings and sentence as modified by this decision. It shall also correct an error in the Court-martial Order, to reflect that Specification 7 of Charge II occurred on 28 March 1997 rather than on 18 March 1997.

Judge SUSZAN and Judge HARRIS concur.

---

3. Our determination of what sentence should be affirmed moots the appellant's final assignment of error, alleging that the absence of the signature page of the Charge Sheet from the record of trial precluded approval of a bad-conduct discharge.